UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
┌──────────────────────────────┐
│ USDC SDNY                     │
│ DOCUMENT                      │
│ ELECTRONICALLY FILED          │
│ DOC #:                        │
│ DATE FILED: 6/10/16           │
└──────────────────────────────┘
```

---

CONSTANTIN CIONCA,

                Plaintiff,

-against-

INTERACTIVE REALTY, LLC, et al.,

                Defendants.

15-CV-05123 (BCM)

**MEMORANDUM AND ORDER**

---

**BARBARA MOSES, United States Magistrate Judge.**

Before the Court is a proposed settlement in this action, brought under the Fair Labor Standards Act (FLSA), 29 U.S.C. §§ 201 *et seq.*, and New York Labor Law (NYLL) §§ 190 *et seq.* and 650 *et seq.*, in which plaintiff Constantin Cionca alleges that defendants Interactive Realty, LLC (Interactive); PJA Building, LLC (PJA); Kaye Levick Realty Company, Inc. (Kaye Levick); John Skrelja; Anthony Skrelja; and Morley Kaye violated various wage, overtime, and payroll notice provisions of the FLSA and NYLL by requiring him to work in excess of 40 hours per week without paying him for any overtime hours, and without providing payroll notices for those hours, during the 13 year period that he was employed as a live-in superintendent in a building owned by PJA and managed by Interactive. Second Am. Compl. (Dkt. Nos. 43, 45) ¶¶ 26, 31-78.[1] On April 7, 2016, at a settlement conference conducted under the supervision of this

---

[1] Plaintiff filed his initial Complaint on June 30, 2015, alleging three causes of action: (1) failure to pay overtime wages under the FLSA, (2) failure to timely pay wages under the NYLL, and (3) failure to provide payroll notices under the NYLL. Compl. (Dkt. No. 1) ¶¶ 44-63. On November 9, 2015, plaintiff filed his First Amended Complaint, adding four new causes of action, including retaliation under the FLSA and NYLL and discrimination based on national origin under Title VII of the Civil Rights Act of 1964, *as amended*, 42 U.S.C. §§ 2000e *et seq.*, and New York State Human Rights Law, N.Y. Exec. L. §§ 290 *et seq.* First Am. Compl. (Dkt. No. 24) ¶¶ 94-102, 117-

Court, the parties reached a settlement agreement and placed the material terms on the public record. Thereafter, they consented to this Court's jurisdiction for all purposes under 28 U.S.C. § 636(c) (Dkt. No. 52) and submitted a joint letter (Dkt. No. 54) seeking approval of their proposed settlement agreement (the Agreement), which they filed as an attachment to their letter. (Dkt. No. 54-1.) The Agreement requires defendants to pay a total of $90,000, with $60,541.96 to be paid to plaintiff, and $29,458.04 to be paid to plaintiff's attorneys for fees and costs. The Agreement also contains a non-disparagement clause and mutual general releases from liability.

Settlements that dismiss FLSA claims with prejudice require approval of the district court or the Department of Labor. *See Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199, 206 (2d Cir. 2015), *cert. denied*, 136 S. Ct. 824 (2016). Before a district court enters judgment, it must scrutinize the settlement to determine that it is "fair and reasonable." *Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012). A fair settlement must reflect "a reasonable compromise of disputed issues rather than a mere waiver of statutory rights brought about by an employer's overreaching." *Mamani v. Licetti*, 2014 WL 2971050, at *1 (S.D.N.Y. July 2, 2014). After careful consideration of the parties' submissions, the Court concludes that while the Agreement's financial terms are fair and reasonable, its overbroad non-disparagement clause prevents this Court from approving it in its current form.

## I.   Reasonable Financial Terms

The Court having supervised the settlement conference attended by the parties and their counsel on April 7, 2016, and having reviewed the parties' confidential *ex parte* letters prior to

---

139. On March 15, 2016, however, the parties filed a stipulation dismissing with prejudice all four of the causes of action that were added in the First Amended Complaint. (Dkt. No. 41.) Plaintiff thereafter received leave from the district judge to file a Second Amended Complaint adding Kaye Levick as a defendant. (Dkt. No. 42.) The Second Amended Complaint includes only the three original causes of action, under the FLSA and NYLL, that plaintiff pleaded at the outset.

that conference, is satisfied with the fairness of the negotiations and the financial terms of the Agreement, which provides for a payment of $60,541.96 to plaintiff after attorneys' fees and costs. The net recovery, when considered in light of the inherent time, cost, and risk savings for both sides in settling this case, is fair and reasonable. The parties disagree, among other things, about the actual number of hours worked by plaintiff and what the appropriate rate of pay would be for those hours. These issues were argued at the Court-supervised settlement conference by counsel on both sides, and no doubt would be aggressively litigated before and during trial. At the time they reached the settlement agreement, the parties also anticipated filing cross-motions for summary judgment, the risk and expense of which are avoided by settlement. Given those factors, the overall settlement amount is reasonable.

The attorneys' fees and costs, which constitute less than one third of the total settlement amount, are also reasonable. A court evaluating attorneys' fees in an FLSA settlement may use either the "lodestar" method or the "percentage of the fund" method, but should be guided in any event by factors including: "(1) counsel's time and labor; (2) the case's magnitude and complexities; (3) the risk of continued litigation; (4) the quality of representation; (5) the fee's relation to the settlement; and (6) public policy considerations." *Lopez v. Ploy Dee, Inc.*, 2016 WL 1626631, at *4 (S.D.N.Y. Apr. 21, 2016) (citing *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 50 (2d Cir. 2000)).[2] Under the "percentage of the fund" method, attorneys' fee awards of one third

---

[2] A court using a lodestar analysis calculates a "presumptively reasonable attorney fee" by multiplying the number of hours reasonably billed in a matter by an appropriate hourly rate. *Gonzalez v. Scalinatella, Inc.*, 112 F. Supp. 3d 5, 20-21 (S.D.N.Y. 2015). Where the lodestar analysis is used "as a mere cross-check" on an otherwise acceptable percentage of the fund, "the hours documented by counsel need not be exhaustively scrutinized by the district court. Instead, the reasonableness of the claimed lodestar can be tested by the court's familiarity with the case." *Davis v. J.P. Morgan Chase & Co.*, 827 F. Supp. 2d 172, 184 (W.D.N.Y. 2011) (citing *Masters v. Wilhelmina Model Agency, Inc.*, 473 F.3d 423, 436 (2d Cir. 2007)).

3

or less of the total settlement amount are generally accepted in this District. *See, e.g.*, *Zhang v. Lin Kumo Japanese Rest., Inc.*, 2015 WL 5122530, at *4 (S.D.N.Y. Aug. 31, 2015) (reducing fee award from 37% to 33% in FLSA settlement); *deMunecas v. Bold Food, LLC*, 2010 WL 3322580, at *9 (S.D.N.Y. Aug. 23, 2010) (collecting cases); *cf. Trinidad v. Pret a Manger (USA) Ltd.*, 2014 WL 4670870, at *11 (S.D.N.Y. Sept. 19, 2014) (reducing fee award from 33% of a "relatively modest" gross settlement amount obtained for a class of over 4,000 members to 25% of the net settlement). The Agreement here calls for a fee award of $28,170.99, which constitutes 31.3% of the gross settlement amount, and an additional $1,287.05 in costs. The total of $29,458.04, including costs, constitutes approximately 32.7% of the gross settlement amount, which falls within the acceptable range under a percentage of the fund analysis.

The parties' joint letter also states that plaintiff's counsel spent a total of 252.7 hours on this matter, including 18.8 hours by attorney Kenneth Katz, whose normal hourly billing rate is $400, 73.9 hours by attorney Nicole Grunfeld, whose normal hourly rate is $350, and 160 hours by attorney Adam Sackowitz, whose normal hourly rate is $275. These figures are supported by time records submitted as an exhibit to a supplemental letter filed on June 9, 2016. (Dkt. No. 55.) Given the history of the case, including the discovery conducted to date, the Court has no reason to doubt the accuracy of the time records.

At the rates provided, plaintiff's counsel's hours add up to a total of $77,385 in fees. The Court need not analyze counsel's normal billing rates, however. The Agreement's fee award represents an average hourly rate of approximately $60 for the 252.7 hours counsel claim to have spent on this matter, which falls well within the range of approved billing rates in this District using a lodestar analysis. *See, e.g.*, *Aguilera v. Cookie Panache ex rel. Between the Bread, Ltd.*, 2014 WL 2115143, at *3 (S.D.N.Y. May 20, 2014) (rejecting rates of up to $550 per hour in FLSA

collective action, and reducing them to $300 per hour for partners, $200 per hour for counsel, and $125 per hour for associates under a lodestar analysis); *Carrasco v. West Village Ritz Corp.*, 2012 WL 2814112, at \*7 (S.D.N.Y. July 11, 2012) ("Courts in this District have determined in recent cases that the range of appropriate fees for experienced civil rights and employment law litigators is between $250 and $450."). Under either method of analysis, the fee award agreed to by the parties in this action is reasonable.

## II.    Overbroad Non-Disparagement Clause

The Agreement also contains a non-disparagement provision that bars plaintiff from "publish[ing] or communicat[ing] to any person any Disparaging remarks, comments, or statements concerning Defendants." Ag. ¶ 6. This clause prohibits

> remarks, comments, statements or communications (written or oral) that (i) reflect adversely on the business affairs or practices of the party being remarked or commented upon, or (ii) impugn the character, honesty, integrity, morality, business acumen or abilities in connection with any aspect of the operation of business of the party being remarked or commented upon.

*Id.* The clause does not contain an exception for truthful statements regarding the facts underlying plaintiff's claims or the litigation of this case.

Confidentiality, or "gag," clauses are contrary to public policy and the remedial purposes of the FLSA because they "prevent the spread of information about FLSA actions to other workers . . . who [could] then use that information to vindicate their own statutory rights." *Lopez*, 2016 WL 1626631, at \*3. Non-disparagement clauses, although typically more limited than confidentiality clauses, can be objectionable in FLSA cases for the same reasons. *Id.* While "not every non-disparagement clause in an FLSA settlement is *per se* objectionable," a clause which bars a plaintiff from making negative statements about a defendant "must include a carve-out for truthful statements about [a plaintiff's] experience in litigating [his] case." *Lopez v. Nights of Cabiria,*

5

*LLC*, 96 F. Supp. 3d 170, 180 n.65 (S.D.N.Y. 2015); *accord Lopez*, 2016 WL 1626631, at *3 (rejecting non-disparagement clause that lacked carve-out for truthful statements about the litigation). The non-disparagement clause in the Agreement contains no such carve-out; its prohibition of any comments that "reflect adversely on [defendants'] business affairs or practices" could be construed to include truthful information about the basis for this action, that is, defendants' alleged failure to pay wages required by law.

Prohibiting plaintiff from speaking about the facts underlying the case would not resolve any "bona fide dispute between the parties." *Camacho v. Ess-A-Bagel, Inc.*, 2015 WL 129723, at *2 (S.D.N.Y. Jan. 9, 2015) (quoting *Dees v. Hydradry, Inc.*, 706 F. Supp. 2d 1227, 1242 (M.D. Fla. 2010)). Instead, it would "silenc[e] the employee who has vindicated a disputed FLSA right," and thereby "thwart[] Congress's intent to ensure widespread compliance with [the FLSA]." *Camacho*, 2015 WL 129723, at *2. Consequently, the Court will not approve the Agreement in its current form.

### III.   Mutual General Releases

The Agreement also contains mutual releases from liability. "Courts in this District routinely reject release provisions that 'waive practically any possible claim against the defendants, including unknown claims and claims that have no relationship whatsoever to wage-and-hour issues.'" *Martinez v. Gulluoglu*, 2016 WL 206474, at *2 (S.D.N.Y. Jan. 15, 2016) (quoting *Lopez*, 96 F. Supp. 3d at 181). A number of judges in this District refuse to approve any FLSA settlement unless the release provisions are "limited to the claims at issue in this action." *Lazaro-Garcia v. Sengupta Food Servs.*, 2015 WL 9162701, at *2 (S.D.N.Y. Dec. 15, 2015) (collecting cases). Judicial disfavor of broad releases is especially pronounced where "the releases were not mutual and protected only the defendants." *Lola v. Skadden, Arps, Meagher, Slate &*

6

*Flom LLP*, 2016 WL 922223, at *2 (S.D.N.Y. Feb. 3, 2016) (Sullivan, J.); *but see Flores-Mendieta v. Bitefood Ltd.*, 2016 WL 1626630, at *2 (S.D.N.Y. Apr. 21, 2016) (Nathan, J.) (rejecting mutual release in FLSA settlement that covered "any and all" causes of action "of any nature whatsoever, known or unknown").

This case involves mutual general releases, negotiated by competent counsel for both sides, releasing both plaintiff and defendants from liability for any claims each might have against the other, up to the date the Agreement is signed, with the exception of personal injury or workers' compensation claims by plaintiff. *See* Ag. ¶ 2. Because this case is not a class action, at least one of the dangers posed by an overbroad release – that it would bind class members who had no bargaining power concerning the settlement terms – is not present here. *See Souza v. 65 St. Marks Bistro*, 2015 WL 7271747, at *5-6 (S.D.N.Y. Nov. 6, 2015) (Cott, M.J.) (approving broad general release in non-class FLSA settlement on condition that release be mutual). As in *Souza*, the plaintiff here is no longer an employee of the defendants, reducing the danger that the release was obtained through improper job-related pressure. *See id.* at *5. Under these circumstances, a general release of the kind proposed in this case makes sense, in order to bring closure to both sides, and the Court finds it to be fair and reasonable.

Apart from the non-disparagement clause discussed above, the Court finds the Agreement to be fair and reasonable. The parties are therefore directed to meet and confer concerning the non-disparagement issue, and to file a joint letter updating the Court on the status of settlement negotiations no later than **June 24, 2016**. If the parties have revised these terms, they are directed to file the revised settlement agreement with their joint letter.

Dated: New York, New York
       June 10, 2016

SO ORDERED.

BARBARA MOSES
United States Magistrate Judge